# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

ANNAIDA JEAN-PIERRE,

        Plaintiff,

vs.

Case No. 3:13-cv-75-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.
_____/

## **OPINION AND ORDER[1]**

### **I. Status**

Annaida Jean-Pierre ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Her alleged inability to work is based on "back pain and chest pain, headaches," as well as "frequent light headedness." Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed April 1, 2013, at 147, 168. On June 28, 2010, Plaintiff filed an application for DIB, alleging an onset disability date of January 1, 2010. Tr. at 120-126. Plaintiff's claim was denied initially, Tr. at 50-51, 54-56, and was denied upon reconsideration, Tr. at 52-53, 71-72.

On October 13, 2011, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 21-46. At the time of the hearing, Plaintiff was sixty-three (63) years old. Tr. at 27. The ALJ issued a decision on November

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 21), filed August 13, 2013; Reference Order (Doc. No. 22), entered August 14, 2013.

22, 2011, finding Plaintiff not disabled through the date of the Decision. Tr. at 10-16. Plaintiff then requested review by the Appeals Council. Tr. at 107-09. On November 20, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 1-6, thereby making the ALJ's Decision the final decision of the Commissioner. On January 17, 2013, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff argues on appeal that the ALJ erred in the "evaluation of the evidence and opinions of" Susan Yandle, M.D. ("Dr. Yandle"), an examining physician. See Plaintiff's Memorandum in Support of Complaint (Doc. No. 15; "Pl.'s Mem."), filed June 14, 2013, at 5 (capitalization and emphasis omitted). On August 13, 2013, Defendant filed a memorandum responding to Plaintiff's argument. See Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 12-16.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date.  Tr. at 12 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff suffers from "the following severe impairment[s]: degenerative disc disease, atypical chest pain (noncardiac) and headache." Tr. at 12 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 12 (emphasis and citation omitted).  The ALJ determined Plaintiff has the residual functional capacity ("RFC") "to perform the full range of light work as defined in 20 CFR 404.1567(b) except [Plaintiff] is limited to occasional squatting, bending to floor and lifting from floor." Tr. at 13 (emphasis omitted).

In terms of the type of work Plaintiff had performed in the past, she had worked as an "office manager" for her husband's business from June of 1994 to January of 2010 when it was forced to close due to tax issues.  Tr. at 31, 154.  The VE characterized Plaintiff's job as a "receptionist/bookkeeper." Tr. at 40.  At step four, the ALJ found Plaintiff "is capable of performing past relevant work as a receptionist/bookkeeper," as she actually performed it.  Tr. at 16 (emphasis and citation omitted).  Because the ALJ found Plaintiff is capable of performing her past relevant work, the ALJ was not required to and did not proceed to step

five. The ALJ concluded that Plaintiff "has not been under a disability . . . from January 1, 2010, through the date of th[e D]ecision." Tr. at 16 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

Plaintiff contends the ALJ erred in assigning great weight to the opinion of Dr. Yandle regarding the effects of her impairments on her ability to perform work. See Pl.'s Mem. at

-4-

5-10. Defendant, on the other hand, contends that Plaintiff failed to meet the burden of proving that she could not perform her past relevant work and that substantial evidence supports the ALJ's findings. See Def.'s Mem. at 3-10.

Dr. Yandle examined Plaintiff on July 20, 2010; she authored a narrative report and completed a "Range of Motion Report Form" on that same day. Tr. at 298-301 (narrative), 302-05 (form). Plaintiff reported a history of low back pain that began twenty-one years earlier, and she told Dr. Yandle that when the back pain began, an MRI had revealed herniated discs. Tr. at 298. Plaintiff also reported a recent onset of spontaneous chest pain and indicated that she went to the hospital in June and July of 2010 for "chest discomfort, dizziness and headache." Tr. at 298. Dr. Yandle noted that these symptoms resolved with rest. Tr. at 298. At the time of the examination, Plaintiff had "no history of hypertension, diabetes, heart attack, other heart disease, asthma, emphysema or seizures." Tr. at 298. Plaintiff's medications consisted of aspirin and Tylenol. Tr. at 298.

Dr. Yandle noted that Plaintiff "appeared to be in no acute distress." Tr. at 299. Plaintiff walked with a normal gait, and although she could not walk on her heels, Plaintiff was able to "walk on her toes without difficulty[,]" used no assistive device, needed no help getting on and off of the exam table, and was able to "rise from chair without difficulty." Tr. at 299. "Squat was full, but [Plaintiff] had tingling in her left back." Tr. at 299. Examination of the chest and lungs was normal. Tr. at 299. Examination of the heart indicated "[r]egular rhythm," with "[n]o murmer, gallop, or rub audible." Tr. at 300. Regarding Plaintiff's musculoskeletal condition, the cervical spine showed "full flexion," and she had a full range of motion in the shoulders, elbows, forearms, wrists, hips, knees, and ankles. Tr. at 300. Dr. Yandle noted that Plaintiff had left lumbar tenderness with a full range of motion and "tingling

-5-

in the left back with forward flexion and pain with lateral flexion to the right." Tr. at 300. Neurologic and fine motor activities were intact. Tr. at 300. Diagnosis included "[d]isc herniation with abnormal patellar reflex on the left, [c]hest pain (etiology undetermined), [n]ear syncope, and [f]rontal headaches." Tr. at 300-01. Dr. Yandle opined that Plaintiff had "a mild to moderate limitation for squatting, for bending to the floor and lifting from the floor." Tr. at 301.

An ALJ is required to consider every medical opinion.[3] See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). "In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether an opinion is amply supported, whether an opinion is consistent with the record and the doctor's specialization." Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 740 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). "Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ will place on that opinion." Id. (citations omitted); see also Davison v. Astrue, 370 F. App'x 995, 997 (11th Cir. 2010) (citation omitted).

Here, after summarizing the medical evidence and Dr. Yandle's opinion, the ALJ assigned "great weight" to the opinion as it was "generally consistent with the overall evidence of record." Tr. at 16. The ALJ proceeded to summarize how the evidence was

---

[3] The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of nonexamining physicians[;] treating physicians'[] [opinions] are given more weight than [nontreating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).

consistent with Dr. Yandle's opinion and the ALJ's ultimate RFC determination.  In this regard, the ALJ stated:

> [T]he . . . [RFC] assessment is supported by the overall evidence of record.  The medical evidence shows that [Plaintiff] has received rather sporadic treatment that has consisted primarily of medication follow ups for refills (primarily Motrin and a heart medication). [Plaintiff] also takes over the counter Tylenol and aspirin. [Plaintiff] has been seen on a couple of occasions at the emergency room with normal diagnostic testing. Lumber x-rays have revealed some degenerative disc disease.  As opined by [Dr. Yandle], I find that [the] overall evidence supports that [Plaintiff] is capable of light work but limited to occasional squatting, bending to floor and lifting from floor. The bulk of physical exams have been unremarkable and have shown normal gait, full range of motion throughout musculoskeletal exams except for some reported complaints of pain (but not supported by the bulk of medical evidence).  For all of the reasons discussed above, I find that the established [RFC] . . . is consistent with the overall, credible evidence of record.

Tr. at 16 (citations omitted).

The ALJ correctly concluded that Dr. Yandle's findings are generally consistent with the overall evidence of record.  The administrative transcript contains few medical records.  The bulk of the medical records were generated from two emergency room ("ER") admissions in June and July of 2010.  The ER records mainly document and focus on Plaintiff's complaints of chest pain and "lightheadedness." E.g., Tr. at 254. The ER records are discussed in detail below.

Plaintiff presented to the ER the first time on June 2, 2010 with complaints of chest pressure/pain, and she reported that the pressure/pain had increased two days prior to her presentment. Tr. at 237.  Plaintiff was admitted to the hospital, and she was discharged two

days later on June 4, 2010.[4] See, e.g., 237-38. Upon admission, the cardiovascular exam was normal with no gallop or murmur. Tr. at 238, 272. Plaintiff's lungs were clear and appeared normal. Tr. at 238, 242. She was seen by the Cardiology department and underwent a stress test that was normal. Tr. at 271. There was no history of coronary artery disease, hypertension, or diabetes mellitus. Tr. at 238. Regarding Plaintiff's neurological condition, she was alert and oriented. Tr. at 239. Normal sensory, motor, speech, and coordination were also observed. Tr. at 239. The musculoskeletal examination indicated a normal range of motion. Tr. at 238. Plaintiff reported that she occasionally was having exertional chest pain, but she had been taking aspirin, which provided some symptom relief. Tr. at 274. Plaintiff also indicated that another relieving factor is rest. Tr. at 281. Plaintiff's past medical history was "[u]nremarkable, except for herniated disk." Tr. at 274.

Plaintiff returned to the ER a second time, on July 10, 2010, again with complaints of chest pain. Tr. at 230, 250. She was admitted to the hospital, and she was discharged one day later on July 11, 2010.[5] See, e.g., Tr. at 230. While admitted, Plaintiff did not appear to be in acute distress. Tr. at 231, 254. The ER records again indicated that Plaintiff's heart exam was normal with no murmur, and her lungs were clear. Tr. at 231, 233, 255. Plaintiff's neurological exam was normal, Tr. at 251, and the musculoskeletal examination indicated a normal range of motion, normal strength, and no tenderness or swelling, Tr. at 232.

---

[4]   Some of the ER records are dated June 5, 2010, but that appears to be the date they were signed, rather than the date of discharge. See, e.g., Tr. at 271-72.

[5]   Some of the ER records are dated July 12 and 30, 2010, but those dates appear to be the dates they were signed, rather than the date of discharge. See, e.g., Tr. at 250, 254, 255.

After the ER admissions, on July 20, 2010, Plaintiff underwent a "[l]imited [l]umbar spine" examination that included taking some "images" (presumably MRI images). Tr. at 301 (capitalization omitted). The examination showed "mild degenerative discogenic change at L1-L2 and L4-L5[.]" Tr. at 305 (emphasis omitted). The examination was "otherwise negative[.]" Tr. at 305 (capitalization omitted). Plaintiff also reported to her family medical practitioner on September 20, 2010 that she still "gets chest pain on[ and ]off[.]" Tr. at 213, 311 (duplicate). On February 20, 2011, Plaintiff underwent a chest radiograph that showed "[s]ubtle opacity, left lower lobe" and was otherwise unremarkable. Tr. at 314. Finally, Plaintiff underwent an evaluation by Teresa Mazur, M.D. on February 20, 2011, during which she complained of "mid-sternal and epIgastric pain," as well as lightheadedness. Tr. at 315. There was "no chest pain[.]" Tr. at 316. The ultimate diagnoses were "[d]izziness," "[v]iral syndrome," and "[v]iral bronchitis." Tr. at 319.

In sum, the medical evidence of record contains relatively unremarkable findings and is consistent with Dr. Yandle's findings. The ALJ's finding in this regard is, therefore, supported by substantial evidence.

Plaintiff contends that because Dr. Yandle did not specifically quantify or address Plaintiff's RFC, the ALJ could not rely on Dr. Yandle's opinion. See Pl.'s Mem. at 6, 8. "The residual functional capacity determination is based on all of the evidence in the record." Kemp v. Astrue, 308 F. App'x 423, 427 (11th Cir. 2009) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997). The "regulations do not require [an] ALJ to base his RFC finding on an RFC assessment from a medical source. Therefore, the failure to include such an opinion at the State agency level does not render the ALJ's RFC assessment invalid." Langley v. Astrue, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011). Although Dr. Yandle did

not specifically quantify Plaintiff's RFC in the typical sense, she opined that Plaintiff had "a mild to moderate limitation for squatting, for bending to the floor and lifting from the floor." Tr. at 301. The ALJ accounted for those limitations in assessing Plaintiff's RFC by finding that Plaintiff has the capability to perform the "full range of light work . . . except that she is limited to occasional squatting, bending to floor and lifting from floor." Tr. at 13 (citation omitted). Especially given that the ALJ accounted for all of Dr. Yandle's stated limitations, the ALJ did not err in assessing Plaintiff's RFC.[6]

For all of the foregoing reasons, the undersigned finds no error in the ALJ's election to assign Dr. Yandle's opinion great weight.

### V.  Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

---

[6]  There are two other remarks made by Plaintiff in presenting her argument that could be construed as attempts to claim error on the part of the ALJ, although they are not adequately developed. Each is addressed in turn.

First, Plaintiff mentions that the ALJ observed the reason Plaintiff is no longer working is due to her husband's business being forced to close because of tax issues. Pl.'s Mem. at 6-7. Plaintiff confirmed during the hearing that she stopped working because her husband's business was forced to close. Tr. at 31. The ALJ relied upon Plaintiff's admission in this regard, along with many other observations, in finding Plaintiff incredible to the extent that her testimony about the effects of her impairments conflicted with the RFC finding. See Tr. at 14. Plaintiff states that "[t]he question is not whether the husband's shop was forced to close but whether or not she could return to work in any capacity with her physical impairments, which would determine her [RFC]." Pl.'s Mem. at 6-7. Plaintiff, however, does not explicitly challenge the ALJ's decision to find per partially incredible. See id. The ALJ did not err when she took into account the reason why Plaintiff stopped working because the ALJ was required to consider all of the evidence of record in determining the extent to which Plaintiff's symptoms limit her capacity to work. See 20 C.F.R. § 404.1529(c)(3).

Second, Plaintiff mentions that because she worked for her husband, her work "can only be described as sheltered employment[.]" Pl.'s Mem. at 7. This remark could be construed as an attempt to contest the ALJ's reliance on that work as "past relevant work," but Plaintiff has not adequately raised the issue for this Court's consideration. "[A] passing reference is not sufficient to preserve an argument for review." Lawton v. Comm'r of Soc. Sec., 431 F. App'x 830, 832 (11th Cir. 2011) (citing Rowe v. Schreiber, 139 F.3d 1381, 1382 n. 1 (11th Cir.1998)). Nor does Plaintiff challenge whether the VE's testimony that she can return to her past relevant work is supported by substantial evidence.

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on December 11, 2013.

_JAMES R. KLINDT_
JAMES R. KLINDT
United States Magistrate Judge

mh.
Copies to:
Counsel of Record